```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


_____
                              )
CHERYL P. FRANCIS,            )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action 04-669
                              )
BOOZ ALLEN HAMILTON, INC.,    )
                              )
          Defendant.          )
_____)
```

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. Plaintiff began to work for Defendant as a Level I Senior Computer Consultant in November 1996 and was subsequently promoted to a Level II Senior Consultant in December 2000. At the time of her hire, Plaintiff was also a Petty Officer in the United States Navy Reserve. On March 14, 2003, Plaintiff was involuntarily ordered by the Navy to report for active duty beginning March 16, 2003. On August 11, 2003, after being discharged from active duty, Plaintiff resumed employment with Defendant. It is undisputed that Defendant rehired Plaintiff and that she retained the same title, salary, consulting engagement, and work location.

Following her return, however, Defendant modified her work schedule. Preceding her deployment, Plaintiff generally worked

the 8 a.m. to 4:30 p.m. shift.  Upon her return, Plaintiff resumed that schedule and occasionally worked until 6:30 p.m., without objection, on an "as needed" basis.  On August 28, 2003, Plaintiff received a memo informing her that Defendant had permanently placed her on the 10 a.m. to 6:30 p.m. shift.  Within that shift, Defendant assigned Plaintiff to a 4-6:30 p.m. rotation in the Call Center where she attended to customers' technical inquiries.  On August 26, 2003, unbeknownst to Defendant, Plaintiff had registered for evening undergraduate courses which conflicted with her new work schedule.  Consequently, Plaintiff arranged for various supervisors and co-workers to replace her on the 4-6:30 p.m. portion of her shift in order for her to attend classes.

Shortly after returning to work, Plaintiff's actions gave rise to concerns regarding her behavior and performance. Deposition testimony demonstrates that on various occasions, Plaintiff left work early without authorization.  Plaintiff was also absent from a team conference call and was seen hanging up the phone during an exchange with a customer.  Co-workers lodged various complaints with the Department Project Manager regarding Plaintiff's behavioral and attendance issues.  Consequently, on November 14, 2003, Defendant issued Plaintiff a Notice of Probation.  In that Notice, Plaintiff was admonished that "failure to immediately address these issues would result in

termination of...employment."  Defendant subsequently provided Plaintiff with a plan for improvement wherein Plaintiff was put on notice that unless she displayed "immediate, substantial, and sustained progress...termination of employment [would] occur." Less than two weeks after receiving the Notice of Probation, Plaintiff again left the office without authorization in order to attend to a customer at an off-site location.  On December 15, 2004 Plaintiff's employment was terminated.

Plaintiff filed the instant suit pursuant to the Uniformed Services Employment and Reemployment Act of 1994, 38 U.S.C. § 4301, et seq. ("USERRA") alleging discrimination, wrongful termination, and retaliation in violation of §§ 4311(a), 4316(c), 4311(b) and respectively.  The parties filed Cross Motions for Summary Judgment.  Plaintiff seeks partial summary judgment on Count I of her Amended Complaint and Defendant seeks summary judgment on all counts.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when the moving party can show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A court must regard the evidence presented in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en

3

banc). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Mere speculation by the non-moving party "cannot create a genuine issue of material fact." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1986).

Count I alleges discrimination in violation of 38 U.S.C. § 4311(a). That section provides, in pertinent part, that "a person who is a member of...a uniformed service shall not be denied ...reemployment...or any benefit of employment by an employer on the basis of that membership...[or] performance of service...." 38 U.S.C. § 4311(a)(2002). The Act defines benefit of employment as "any advantage, profit, privilege...that accrues by reason of an employment contract or agreement...and includes...the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2).

Plaintiff first claims that her work schedule was modified following her return from deployment. Preceding her deployment, Plaintiff generally worked the 8 a.m. to 4:30 p.m. shift and shortly following her return, Defendant placed her on the 10 a.m. to 6:30 p.m. shift. Plaintiff contends that this modification constituted an impermissible denial of a benefit of employment. In support of this assertion, Plaintiff notes that the modified

4

schedule conflicted with her night classes and thus functioned to deprive her of the ability to attend class, a benefit of employment that she enjoyed prior to her military service.

Courts addressing this issue have consistently required a significant modification in work schedule in order to find that the employee had been deprived of a benefit of employment. Hill v. Michelin N. Am., Inc., 252 F.3d 307, 312 (4th Cir. 2001) (noting a significant difference in pre and post-deployment schedules); Allen v. United States Postal Serv., 142 F.3d 1444, 1447 (Fed. Cir. 1998)(finding that priority in selecting day shift over night shift was an advantage of employment); Carlson v. New Hampshire Dep't Safety, 609 F.2d 1024, 1026-27 (1st Cir. 1979).

Plaintiff cannot show a significant modification in her work schedule. At the time of her reemployment, Plaintiff continued working her pre-deployment schedule. Plaintiff returned to work on August 11, 2003 and her pre-deployment schedule was not modified until August 28, 2003, more than two weeks after her reemployment. Even then, Plaintiff's schedule changed by only two hours and the total hours that she worked per day (8) remained unchanged.

In further contrast to the cases in which courts found schedule modifications substantial enough to constitute a denial of benefits, Plaintiff in this case had worked the shift in

5

question prior to her deployment.  The record indicates that Plaintiff had frequently and without objection worked the 10 a.m. to 6:30 p.m. shift.  Defendant was not bound, by contract, agreement, or otherwise, to place Plaintiff on the shift of her choice.  Furthermore, the record also demonstrates that following her return to work, Plaintiff did not object to working the later shift until after she discovered that it conflicted with her classes, thus belying her contention that the modification was somehow inherently objectionable.  Consequently, Plaintiff has failed to demonstrate that the schedule modification constituted a denial of a benefit of employment.

Plaintiff also asserts that Defendant reduced her professional responsibilities from the previous Level II to those of a Level I consultant thereby depriving her of a benefit of employment in violation of § 4311.  In further support of this contention, Plaintiff notes that upon return from deployment, she was no longer responsible for the occasional Tier III work that she performed prior to her departure.  USSERA requires only that Plaintiff be reemployed in a "position of like seniority, status and pay."  38 U.S.C. § 4313(a)(2)(A)(2002).

However, Plaintiff offers no support, beyond her own conclusory opinions, for the contention that her status and duties were changed and that such changes constituted the denial of a benefit of employment.  The undisputed facts demonstrate

6

that Plaintiff returned to her pre-deployment status as a Level II Senior Consultant, the same salary, and the same work location.  Moreover, Plaintiff's own deposition testimony reveals that she performed nearly identical duties before and after her deployment, that is, providing both Tier I and Tier II support (in the Call Center).  The fact that she no longer performed occasional Tier III responsibilities was not a result of any action taken by the Defendant but rather was a function of client necessity occasioned by the elimination of a project.  Defendant satisfactorily returned Plaintiff to her pre-deployment employment status and she was not denied any cognizable benefit of employment, as such, Defendant has complied with the mandates of USERRA.

With regard Count II for wrongful discharge, the Act provides that "[a] person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause...within 180 days after the date of such reemployment...."  38 U.S.C. § 4316(c)(2)(2002).  An employer may terminate a protected employee for cause "if the discharge satisfies two conditions of reasonableness: '(1) that it is reasonable to discharge employees because of certain conduct, and that employee had fair notice...that such conduct would be grounds for discharge.'"  Jordan v. Jones, 84 F.3d 729, 732 (5th Cir. 1996) (citing Carter v. United States, 407 F.2d 1238, 1244

(D.C. Cir. 1968)(construing USERRA's legislative predecessor, the Veterans Reemployment Rights Act). The record in the instant case is replete with references to Plaintiff's behavioral infractions. She was late for work on various occasions and she consistently left early without authorization or explanation. The record also contains evidence of her general unpleasantness towards co-workers and hostility towards customers as evidenced by her hanging up the phone during an exchange with a customer. Such examples of insolence and disrespect clearly provide an employer with reasonable grounds for the termination of an employee and were prohibited by Defendant's "Core Values" policy.

Further, it is undisputed that Plaintiff was placed on notice that the persistence of such conduct would result in her termination. Defendant not only issued a Notice of Probation but also provided Plaintiff with guidelines and a plan for the rectification of the situation. As such, the undisputed evidence demonstrates that Plaintiff's termination was properly executed for cause.

Finally, in Count III, Plaintiff claims that she was improperly terminated in retaliation for exercising her rights under USERRA. Plaintiff relies largely upon the temporal proximity between the complaints that she made on August 29, 2003 and September 3, 2003 regarding Defendant's alleged USERRA violations, and Defendant's decision to place her on Notice of

Probation on October 27, 2003.

In order to prevail on a retaliation claim under 38 U.S.C. § 4311(b)(4), Plaintiff must demonstrate that the adverse employment action at issue was the result of discriminatory animus motivated by military status. 38 U.S.C. § 4311(c)(2)(D). If the plaintiff succeeds in so proving, Defendant may then rebut that prima facie case by demonstrating that the action would have been taken irrespective of the plaintiff's military status.  <u>Id.</u>

Here, Plaintiff's own deposition reveals that the basis for her allegation consists solely of her own opinions and perceptions and is devoid of any factual support.  Plaintiff conceded during her deposition that she could not identify any facts that would suggest that her military status was the impetus for any allegedly adverse actions taken by Defendant.  Even if she had succeeded in proffering some evidence of discriminatory motivation, in light of her consistently poor evaluations and the frequent complaints regarding her behavior, Plaintiff would remain unable to demonstrate that the adverse actions would not have been taken absent her military service.  As such, Plaintiff has failed to demonstrate the existence of a genuine issue of material fact for trial.

An appropriate Order shall issue.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 22 , 2005

9